McALLISTER v. SOUTHERN PAC. CO.

(District Court, E. D. New York. October 21, 1901.)

SHIPPING—LOSS OF CARGO—NEGLIGENT UNLOADING OF LIGHTER.

    A lighter was loaded with 100 barrels of cement in the hold and a large number of rolls of bagging, weighing 253 tons, piled upon the deck. It was the duty of respondent to transfer the load to a steamer; and when a portion of the bagging had been unloaded, all of which was taken from the side next the steamer, the lighter listed to the other side, and a portion of the bagging was thrown overboard, and lost or damaged. The load was unusual in weight and height, but not to an extent to endanger it if properly handled. It was properly loaded, and the lighter had been brought with it a considerable distance in safety. *Held*, that the fact of its unusual height required that in unloading the removal should be distributed as evenly as possible over the whole load, which was also shown to be the usual way, and that the negligent manner of unloading was the cause of the vessel's listing, and rendered respondent liable for the damage.

In Admiralty. Action to recover for loss of cargo.

Hyland & Zabriskie, for libelant.

Maxwell Evarts, for respondent.

THOMAS, District Judge. The steamship Winifred, with port side in shore, lay on the upper side of pier No. 12 in the North river, between 2 and 3 o'clock on January 30, 1900. Alongside her was lighter No. 12, with her bow out, so that the vessels were starboard to starboard. In the lighter's hold were stored 100 barrels of cement, while on the deck were 5,356 rolls of bagging, weighing 265 tons. It was the duty of the respondent to transship the bagging from the lighter to the steamer, but when such duty had been undertaken and continued for about 20 minutes the lighter careened to port, dumping a portion of her deck load in that direction. Straightway recovering, she dumped a portion of the load on the starboard side of the steamship; and for the loss of bagging thus sustained this action has been brought. It does not ap-

pear that the piles of bagging yet untouched by the stevedores on the port side of the lighter either were disturbed, toppled, or fell until the lighter lurched as stated. The listing of the lighter destroyed the equilibrium of the piles, disintegrating and causing the bagging to go overboard. They did not fall down, but were thrown down. But for such listing, the piles would have remained intact. What caused the vessel to list to port,—gradually, as libelant claims; suddenly, as respondent claims? The unloading, so far as it had proceeded, was all from the starboard side of the lighter, from the fore and aft corners progressing towards the waist and athwartship. The libelant contends that the 438 rolls, weighing 21 tons, had been transshipped when the accident happened, which corresponds with the statement of the respondent's agent, written May 16, 1900; but the respondent places the number of transferred rolls at 148. Whatever the number, it was sufficient to destroy the equilibrium of the lighter, and throw down the piles. The respondent urges that the libelant's negligence caused the accident, and the same consisted (1) in stowing the bagging to too great height, (2) in putting no sufficient dunnage under it, (3) and in not placing a binder on top of the bagging. The last accusation is not supported by the evidence. The second is open to discussion, but it may be that the scantling at the corners were connected with boards of less thickness amidships. But the inquiry is immaterial. It is not proven that the foundations of the piles gave way, nor that any undue outward inclination was given to the mass. On the other hand, the evidence is that the piles were drawn in one foot for each layer, converging the load towards the center, and that there were three binder rows at the top. If now the preponderance of evidence were that the piles fell to port, or sagged to port, causing the vessel to list, the importance of knowing the effectiveness of the dunnage would be apparent. But the careening of the vessel dumped the load, and it can hardly be claimed that the dunnage should have been sufficient to fortify the piles against such disturbance. But was the deck load negligently high? It was a large and high, but not an unprecedented, load. The number of tiers could have been 12; it is unlikely that it was over 14. What specific reason is there for inferring that such a load, with 100 barrels of cement in the hold, was improper? Was there danger of its falling apart during navigation? It had been brought from Greenpoint to pier 25, withstanding apparently all the disturbing influences of the two rivers. The evidence does not show there was any danger of its falling unless the vessel unduly listed. Was it so large and high that a removal of the inshore part to the extent that it was removed would cause the lighter to list? Such appears to have been the fact. If the cargo is removed, in the first instance, from the starboard side, the lighter must list to port. This is and was apparent. The stevedores knew this, even if they were not specifically warned of it. If the load was great, so much greater the reason for using care in distributing the work of unloading. It is urged by the respondent that the unloading was conducted ac-

cording to its custom theretofore resulting in safety. The evidence tends to show that they had been removing the load working down towards the deck on the whole starboard side. There is evidence that the removal should be made somewhat evenly from the whole load, and that such is the general way; and the court is justified by the evidence and by the very nature of the case in holding that such is the proper way. Such manner of loading the stevedores did not employ. Had it been adopted, there is no reason for inferring that the lighter would have dumped. In other words, holding that the load was unusual in weight and height, yet the rolls were united suitably, and, had the work of unloading been properly distributed, the lighter would not have listed and dumped the load. Hence the culpable negligence was not in the weight and height of the load, but in the way such a load was handled. If the load was high, the fact was apparent; hence the necessity for even distribution of the work was necessary. The danger from the height of the load lay in improper discharge; hence the height and weight were not dangerous unless the cargo were negligently handled.

The libelants should have a decree for damages and costs.